THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

   Plaintiff,

   v.

**JOSÉ SÁNCHEZ-MAYSONET,**

   Defendant.

Crim. No. 18-792 (ADC)

**OPINION AND ORDER**

Before the Court is a Report and Recommendation (R&R) recommending denial of the motion to suppress filed by defendant José Sánchez-Maysonet (defendant). **ECF Nos. 54**, **22**. Defendant filed an objection to the R&R. **ECF No. 63**. The government filed a motion in support of the R&R. **ECF No. 66**. For reasons set forth, the Court **ADOPTS** the R&R, **ECF No. 54**, and **DENIES** defendant's motion to suppress, **ECF No. 22**.

I.    **LEGAL STANDARD**

When a party timely files an objection to an R&R, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

It is undisputable that the "Supreme Court has held that a district judge need not hear the live testimony of a witness in order to accept the credibility determination of a magistrate

judge." *U.S. v. Hernández-Rodríguez*, 443 F.3d 138, 147–48 (1st Cir. 2006)(citing *United States v. Raddatz*, 447 U.S. 667 (1980). Courts within this District and sisters District Courts within the First Circuit have recognized that "require[ing] the district court to conduct a second evidentiary hearing whenever either party objects to the magistrate judge's credibility finding would frustrate the plain objective of Congress to alleviate the increasing congestion in district courts." *U.S. v. Negrón-Colón*, 18-622 (PAD), 2020 WL 865412, at *2 (D.P.R. Feb. 21, 2020)(quoting *United States v. Cadieux*, 295 F. Supp. 2d 133, 135 (D. Me. 2004)).[1]

Accordingly, after reviewing the testimonies provided at the evidentiary hearing (ECF No. 60) the exhibits on record and pleadings on the case, the Court adopts the R&R's uncontested statements of applicable law and incorporates them by reference.

**II.    ANALYSIS**

Defendant's objections to the R&R are two folded:  He alleges:

a) having been subjected to an illegal seizure of his person and an illegal search of the vehicle since no reasonable suspicion or probable cause existed for the intervention, and

 b)  challenges the Magistrate Judge's credibility determination as it relates to PRPO Rivera's testimony. Defendant also asserts a "de novo hearing" is warranted since the

---

[1] Defendant requests a de novo hearing on his motion to suppress, citing disagreement with the Magistrate Judge's credibility findings. **ECF No. 63** at 2. This is not required, and it is not necessary in this case. *See U.S. v. Raddatz*, 447 U.S. 667, 673-77 (1980) (explaining that a de novo hearing is not required for a district court to conduct a de novo review of a Magistrate Judge's findings, including credibility determinations).

Magistrate Judge determined that the issue regarding "viewing of the weapon" was a "closer call."

The objections are addressed in turn.

A. <u>Whether Reasonable Suspicion or Probable Cause existed for the intervention.</u>

Defendant's legal standing to challenge the government's search and seizure is not in question.

Also uncontested (actually corroborated by defendant's testimony) is the fact that:

(a) Defendant's vehicle had very dark tints of different degrees on its windows and windshield that appeared to exceed the legal limits.

(b) The area where defendant's vehicle was parked had no streetlights. There was a light pole on the other side of where the vehicle was parked and from a nearby business "with lights on and people standing in the front." (Exhibit C2.)

(c) Agent Rivera was part of a motorized unit of 6 agents that were providing escort to the then Governor and were responsible for closing off streets to enable the governor's motorcades drive by. Agent Rivera and some fellow agents approached defendant and some other individuals standing nearby defendant's vehicle and a tow truck parked in front. When questioned by defendant as to what she was doing. Agent Rivera responded while walking around the area where both vehicles were located.

(d) Agent Rivera testified that she "perceived a strong smell of "fresh", (i.e., not burnt) marihuana emanating from defendant's vehicle and that the scent became stronger when she moved her face close to the right end of the vehicle's driver's side window and door, both of which were closed. **ECF No. 60** at 37-39, 59. Agent Rivera testified that she did not observe anyone smoking marijuana nor seized any burnt marijuana cigarettes off the ground. *Id*. At 59-60. She testified that she did not inform her fellow agents on the scene that she had smelled marijuana. *Id*. at 62-63. Rather, she radioed-in the vehicle's license plate information. Reportedly, defendant noticed Agent Rivera's actions. Defendant then opened the driver's door, got in, closed the door, and started the engine. *Id*. at 37. At the time, Agent Rivera who was standing on the rear corner of the vehicle, approached the vehicle's door. Agent Rivera instructed defendant not to leave. *Id*. at 37-38. When defendant opened the door and questioned why he could not leave, Agent Rivera responded that he could not leave because of the smell of marijuana. Since the engine was on, the lights from the phone charger and instrument panel light up.  At that point, Agent Rivera detected, within the console, a weapon.

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968). As explained within the R&R, "a law enforcement officer may 'conduct a brief investigatory stop if he has a

reasonable, articulable suspicion that criminal activity is afoot.'" **ECF No. 54** at 13 (quoting *U.S v. Romain*, 393 F.3d 63, 71 (1st Cir. 2004)).

Defendant contends there is simply no way Agent Rivera could have smelled marijuana because the substance was sealed in bags or containers within his closed vehicle. He highlights Agent Rivera's testimony acknowledging that she did not alert her fellow officers on the scene to the scent of marijuana, she did not see anybody smoking marijuana at the scene, and she did not observe any marijuana outside of the vehicle. These factors, he argues, demonstrate that her testimony of reasonable suspicion is "false pretext" intended to circumvent his "constitutional rights to illegally detain him and search his vehicle." **ECF No. 63** at 7. The government responded that the warrantless search of the vehicle was valid under the "automobile exception,"

Having reviewed the record, the Court agrees with the Magistrate Judge's findings that Agent Rivera had reasonable suspicion to detain defendant. The Court is not persuaded that Agent Rivera needed to alert the officers on the scene of her detection of marijuana odor to substantiate or validate her testimony. It is undisputed that she immediately radioed in the vehicle's license plate information upon detecting the marijuana odor from the vehicle. This prompted defendant to attempt to leave while Agent Rivera instructed him to remain. These factors substantiate a finding of reasonable suspicion for Agent Rivera's initial stop of defendant. *See U.S. v. Ruidíaz*, 529 F.3d 25, 29 (1st Cir. 2008) (explaining that the "fact-intensive"

"inquiry into reasonableness requires a reviewing court to consider the totality of the surrounding circumstances").[2]

   B. <u>Whether the Weapon Seized was on Plain View</u>

Defendant next challenges the R&R's finding that Agent Rivera observed in plain view a firearm protruding from the radio console of defendant's car. **ECF No. 63** at 8. Defendant notes the R&R's language describing the plain view issue as a "much closer call." **ECF Nos. 54** at 15; **63** at 2, 8. The Magistrate Judge considered the determination a "close call" because there was conflicting testimonies by Agent Rivera and defendant, and the determination at the very end turned into whether all factors considered; there was sufficient light enabling visibility inside the vehicle.

"During a lawful *Terry*-type search, police officers may seize an object in 'plain view' without a warrant if they have probable cause to believe it is contraband without conducting some further search of the object, i.e., if its incriminating character is 'immediately apparent.'" *U.S. v. Schiavo*, 29 F.3d 6, 9 (1st Cir. 1994) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). Agent Rivera testified that she approached defendant at the driver's side door as he boarded the vehicle. **ECF No. 60** at 37. When Agent Rivera reached the driver's door, defendant opened the door. *Id*. She testified she saw the weapon in plain view during her conversation

---

[2] It must be highlighted that defendant's vehicle had tinted windows, darken than what allowed by law. This constituted a traffic violation also warranting the Agent's intervention, at least for questioning.

with defendant while he sat inside the vehicle with the door open and the engine on. *Id.* at 37-39, 67-68. She recalled the dome light being on at the time and testified she had no "trouble seeing" the weapon. *Id.* at 40, 78.

Defendant challenged Agent Rivera's testimony by eliciting testimony from an investigator with the Federal Public Defender's (FPD) Office. *Id.* at 81. The investigator had conducted a field investigation of defendant's vehicle to attempt to re-create the view of the console that Agent Rivera may have had on the night in question. *Id.* at 82. He conducted his investigation three months after defendant's arrest and during day hours in the FPD parking lot. *Id.* at 82-83. The investigator placed in the radio console a dummy gun of the same make and model as the pistol seized, though the replica did not include the chip modification that the seized weapon had, which is undisputed, added length to the weapon. *Id.* at 84-85, 98-99. The investigator stood outside of the vehicle and photographed the interior driver's side of the vehicle with the driver's door open. *Id.* at 89-90, 99-100. He used his personal camera and took several photos from various camera zoom settings. *Id.* at 83, 89-91. He also photographed the view of the console from within the swing radius of the open driver's side door while defendant sat inside the vehicle. *Id.* at 91. According to the investigator, he was unable to see the dummy weapon until he zoomed in quite close, and he could not see it while defendant was seated in the vehicle. *Id.* at 91-93. The investigator noted the dome light did not turn on (consistent with defendant's assertions that the dome light did not work) when the door was open but also

testified that he did not examine the light or confirm if it was switched on. *Id.* at 93, 97, 103. Defendant does not contest the fact when the engine is turned on and the vehicle's door is opened, the lighter and all console lights turn automatically on.

Defendant also testified in his defense at the suppression hearing. He testified that Agent Rivera remained behind the vehicle by the rear license plate when he boarded the car, turned it on, and closed the door and that it was a different officer the one who approached him at the driver's side door. *Id.* at 113. That officer knocked on the window, prompting defendant to lower it "[a] little bit, just so [he] could hear." *Id.* at 113-14. The officer instructed he turn off the engine and exit the vehicle. *Id.* at 114. Defendant did so, closing the driver's door. *Id.* Agent Rivera, he said, remained by the rear license plate. *Id.* at 115. Defendant testified that the officer that knocked on the window stepped back while defendant exited the vehicle. *Id.* at 114-15. The officer then returned, grabbed him by the hands, and asked him what was inside the vehicle. *Id.* at 113-16. Without defendant's consent, the officer opened the driver's door and started searching. *Id.* at 116. He found the containers of marijuana in the door area. *Id*. The officer continued searching the vehicle, until he found the pistol in the console. *Id.* at 117. The officer arrested defendant and continued his search, finding another weapon in the backseat. *Id.*

The parties agree the visibility at the scene was poor. It was nighttime. Ambient light emanated primarily from nearby businesses. The record contains conflicting testimony as to whether one streetlight in the vicinity functioned; defendant testified none functioned while

Case 3:18-cr-00792-ADC-BJM    Document 83    Filed 02/02/24    Page 9 of 11

Crim. No. 18-792 (ADC)                                                                                         Page 9

Agent Rivera recalled one functioning at the time. *Id.* at 42-43, 105. Defendant also testified that significant vehicle traffic on the street his vehicle was parked provided some light, presumably via headlights. *Id.* at 110, 122.

Visibility inside defendant's vehicle was also limited. The parties do not dispute that the vehicle's side windows were darkly tinted and that the rear and front windshields were somewhat tinted. According to defendant, the interior dome light was at that time, and had always been, inoperative. *Id.* at 13-14. The parties agree that light cast by the vehicle's radio control panel and cell phone charger illuminated the radio console when the vehicle's engine was turned on. *Id.* at 29, 111, 126. The radio console resembled a pocket-like storage area that was black in color with silver or gray accents at its entry. *Id.* at 86. The weapon found in the console was a small, black pistol elongated by a chip modification. *Id.* at 41.

The Magistrate Judge found the investigator's testimony and evidence of his re-creation largely unhelpful, noting that the seized weapon had a chip, which made it longer than the replica used. **ECF No. 54** at 7-8. The R&R also highlighted the investigator's testimony that "he did not know the position of how the gun was found on the night of the events in question," he "did not test the recreation of events with different positions of the gun in the console area," and he "did not examine the on/off switch" of the dome light inside the vehicle to conclusively establish that it was inoperative. *Id.* at 8. Likewise, the investigator acknowledged that a different position of the gun in the console or a larger weapon could make it more visible,

particularly to the extent that different positioning could cause the butt of the black gun to protrude from the console and stand out against the contrasting grey accents flanking the console's opening. **ECF No. 60** at 100-102. He also acknowledged that the sundry items within the cup holders and console area that were present on the night in question, but not in his re-creation, could have rendered the gun more visible. *Id.* at 102.

The Court agrees with this credibility analysis. The field investigation did not replicate the events under similar conditions. The investigation did not utilize a replica gun elongated with a chip and it did not account for any other perspective of the vehicle or positioning of the weapon in the console other than apparently what matched the investigator's height and beliefs. The simulation was conducted with day light, time in which the tint on the window as per design, are to preclude visibility. All these discrepancies certainly undermine the evidentiary value and weight of the exercise. More so, it remains a fact that while defendant sat in the vehicle and spoke to Agent Rivera while the window was down or the door opened, turned the vehicle console lights on. This is the time in which Agent Rivera indicated having seen defendant's face clearly and having seen the weapon protruding from the console.

The Court also agrees with the Magistrate Judge's conclusion that Agent Rivera credibly testified that she saw the weapon in plain view. The parties do not dispute that when the vehicle's engine was on, lights from the phone charger and control panel illuminated the radio console area. And, the record does not dispute the existence of ambient light from the nearby

businesses and passing traffic. More so, Agent Rivera testified that she saw the weapon while she stood at the driver's side door while the engine was on, and defendant sat in the driver's seat with the door open. She testified she had no "trouble seeing" the weapon. The Court rejects defendant's testimony that Agent Rivera was not astride his car door apparently ever. The testimony is hard to believe and self-serving, particularly in light of defendant's focus (nearly exclusively) on refuting Agent Rivera's ability to see inside the vehicle [once she stood by the door.]

The Court adopts the R&R. **ECF No. 54**. Defendant's motion to suppress is **DENIED**. **ECF No. 22**. The Court denies defendant's request to hold a de novo suppression hearing.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 2nd day of February, 2024.

                                                    **S/AIDA M. DELGADO-COLÓN**
                                                    **United States District Judge**